KILBY STEEL COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL
REVENUE, RESPONDENT.

Docket No. 99528.   Promulgated May 24, 1940.

*L. B. Liles, Esq., Hartwell A. Greene, Esq.,* and *J. J. Scarbrough,
Jr., Esq.,* for the petitioner.
*John R. Stivers, Esq.,* for the respondent.

### OPINION.

VAN FOSSAN: The respondent determined a deficiency of $9,427.59
in income tax for the taxable year 1936 consequent on the disallowance
of a credit of $46,404.83 claimed by petitioner on account of a con-
tract restricting the payment of dividends.   The contract, dated No-
vember 25, 1935, was with the Federal Reserve Bank of Atlanta,
Georgia, and the First National Bank of Birmingham, Alabama.
It provided:

So long as said items of indebtedness, or either of them, are unpaid, the
company will not declare dividends in any form on its capital stock except with
the permission, in writing, of the National Bank and the Reserve Bank.

The respondent held:

The quoted provision of the contract does not contain language which would
operate as a legal restriction upon you as to any amounts which can be dis-
tributed as dividends, unless the written permission of the bank or banks to
make such distribution is refused.   Since written permission of the bank or
banks to declare a dividend was not refused, this paragraph does not operate to
qualify you for the allowance of a credit under the provisions of Section 26 (c)
(1) of the Revenue Act of 1936, and the credit taken on your return is, therefore,
disallowed.

The facts were stipulated in large part and the stipulation was
made part of the record in the case.   Certain additional facts were
adduced by oral testimony.

The contract above referred to dealt with an indebtedness of peti-
tioner to the National Bank in the sum of $163,750, evidenced by two
notes, and obligated the Reserve Bank to participate in the carrying
of the loan.   Paragraph 18 of the contract set forth the restriction
on the payment of dividends above quoted.   At various times during
1936 petitioner sought and obtained from the banks concessions reduc-
ing the monthly payments under the contract.

During 1936 petitioner sustained a large operating loss and its financial position was badly strained. To obtain working capital, meet pay rolls, and similar accounts and continue to operate, petitioner was obliged to sell securities already pledged to the banks. Numerous conferences were held with bank officials and the officials were reluctant to make concessions. At the end of 1936 arrears on monthly payments under the contract amounted to $40,000. Petitioner had but $5,000 in cash and was dependent on collections to meet pay rolls then due. There was also approximately $50,000 then due in accounts payable. Petitioner had no free or unpledged assets.

Petitioner, during the taxable year, did not declare or pay a dividend of any type on its capital stock. It did not request, either orally or in writing, permission from either of the banks to pay a dividend nor was such permission granted. It is stipulated that had such request either orally or in writing been made of the banks, the request would have been refused. Sound business and banking practice would not have sanctioned the payment of a dividend in any form during 1936. Petitioner's officers knew from their many conferences with bank officials that a request to pay dividends would be refused and would have discredited them with the banks.

Though no copy of any ruling of the respondent was presented at the hearing, reference was made to a letter written by the Commissioner under date of December 23, 1936, to a firm of attorneys at Toledo, Ohio, respecting a similar situation in which it appears that the Commissioner stated that in such a case formal written application for permission to pay dividends was a prerequisite regardless of the known futility of such action. This letter was not formally or officially published, but it was agreed that the letter appeared during 1937 in privately printed tax services. Petitioner had no knowledge of this letter in 1936.

At the hearing respondent's counsel, with commendable frankness, admitted that the proposed interpretation of section 26 (c) (1) of the Revenue Act of 1936 [1] in this case seemed harsh. We will go further

---

[1] SEC. 26. CREDITS OF CORPORATIONS.

In the case of a corporation the following credits shall be allowed to the extent provided in the various sections imposing tax—

\*          \*          \*          \*          \*          \*          \*

(c) CONTRACTS RESTRICTING PAYMENT OF DIVIDENDS.—

(1) PROHIBITION ON PAYMENT OF DIVIDENDS.—An amount equal to the excess of the adjusted net income over the aggregate of the amounts which can be distributed within the taxable year as dividends without violating a provision of a written contract executed by the corporation prior to May 1, 1936, which provision expressly deals with the payment of dividends. If a corporation would be entitled to a credit under this paragraph because of a contract provision and also to one or more credits because of other contract provisions, only the largest of such credits shall be allowed, and for such purpose if two or more credits are equal in amount only one shall be taken into account.

and hold that it is arbitrary and without legal sanction. There had been no authoritative published ruling or interpretation by the Commissioner and, hence, petitioner had no notice, either actual or imputed, of any such procedure. In fact, no such procedure was legally required. In the situation present, it would have been a vain and purposeless thing for petitioner to make the request. Petitioner was bound by the contract provision against dividends. The situation is just such as the statute was designed to meet. Respondent is reversed.

*Decision will be entered for the petitioner.*