HENRY MILL & TIMBER COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 98284. Promulgated March 20, 1941.

*A. E. Blair, Esq.*, and *George J. Busch, C. P. A.*, for the petitioner.
*B. M. Coon, Esq.*, for the respondent.

**1074**

HILL: This proceeding is for the redetermination of a deficiency in income tax for the year 1936 in the amount of $536.88. The sole issue submitted for decision is whether or not petitioner is entitled, under section 26 (c) of the Revenue Act of 1936,[1] to a credit of at least the amount of its adjusted net income for purposes of computation of the surtax on undistributed profits.

Petitioner is a corporation, organized under the laws of the State of Washington, with its principal office at Tacoma. It filed its income tax return for the year 1936 with the collector of internal revenue for the district of Washington, disclosing a net loss of $2,104.37, and no income tax was paid. Petitioner's balance sheet at December 31, 1936, indicated an operating loss for the taxable year in the amount of $2,169.87, but in computing the deficiency, respondent made certain adjustments to income, not in controversy here, which resulted in a taxable net income of $3,485.23, instead of the net loss reported on petitioner's return. In the determination of surtax liability, respondent allowed no dividends paid credit or credit for contracts restricting payment of dividends under section 26 (c), *supra*, resulting in an adjusted undistributed net income of $3,170.27.

Petitioner's capital stock consisted of common, preferred, and prior preferred shares, and at all times material here, one-half of the common and preferred stock was held by W. Yale Henry, president of petitioner, and his wife or members of his family, and one-half was held by the estate of John C. Buchanan. The prior preferred stock was held by the Henry interests and others, none being owned by the Buchanan interests.

Prior to the taxable year, a controversy arose between the Henry and the Buchanan interests respecting the making of further capital investments in petitioner's mill, the Henry stockholders opposing the making of any such additional expenditures, while the Buchanan interests desired to make further improvements. At a meeting of

---

[1] SEC. 26. CREDITS OF CORPORATIONS.

In the case of a corporation the following credits shall be allowed to the extent provided in the various sections imposing tax—

\*    \*    \*    \*    \*    \*    \*

(c) CONTRACTS RESTRICTING PAYMENT OF DIVIDENDS.—

(1) PROHIBITION ON PAYMENT OF DIVIDENDS.—An amount equal to the excess of the adjusted net income over the aggregate of the amounts which can be distributed within the taxable year as dividends without violating a provision of a written contract executed by the corporation prior to May 1, 1936, which provision expressly deals with the payment of dividends. \* \* \*

(2) DISPOSITION OF PROFITS OF TAXABLE YEAR.—An amount equal to the portion of the earnings and profits of the taxable year which is required (by a provision of a written contract executed by the corporation prior to May 1, 1936, which provision expressly deals with the disposition of earnings and profits of the taxable year) to be paid within the taxable year in discharge of a debt, or to be irrevocably set aside within the taxable year for the discharge of a debt; to the extent that such amount has been so paid or set aside. For the purposes of this paragraph, a requirement to pay or set aside an amount equal to a percentage of earnings and profits shall be considered a requirement to pay or set aside such percentage of earnings and profits. \* \* \*

the stockholders held on December 12, 1935, a compromise was reached under which it was agreed that petitioner should borrow $85,000 from a bank and that the fund should be expended for certain specified purposes, as set out in the minutes of a stockholders' meeting reading as follows:

Present: W. Yale Henry and John F. Buchanan. Paul Billings, one of the executors of the estate of John C. Buchanan, deceased, was also present. Mr. Henry represented Adeline S. Henry, his wife, a substantial holder of common stock and also a preferred stockholder.

Mr. Henry outlined the policy proposed by the stockholders to be carried out in view of the fact that the Company had negotiated a present loan aggregating $85,000.00 from The National Bank of Tacoma, of which $70,000.00 is to be presently advanced, inclusive of the present indebtedness of the Company to the Bank, and $15,000.00 is to be advanced within six months. Mr. Henry's statement was as follows:

The $85,000.00 is to be apportioned approximately as follows:

| | |
|---|---|
| Taxes due | $26,000.00 |
| Bills due | 12,000.00 |
| Logs due | 12,000.00 |
| Bank loan in force | 18,500.00 |
| Repairs and improvements | 13,000.00 |

The item of $13,000.00 is to be divided approximately as follows: Approximately $2,500.00 to renew the crane track, with ties and rails; approximately $4,500.00 to repair the bulkheads on the north and west fronts of the mill property; approximately $7,000.00 to install Simondson Turner and extend carriage track; these improvements probably to be in 1936.

It is understood that the retirement plan of the Company shall be along a line permitting the necessary action to be taken in order to, as soon as possible, put the Company in a position to pay dividends from earnings, with the understanding that these surplus funds shall first be used toward making the necessary retirement according to the terms of the mortgage. Net earnings over and above this shall be divided approximately as follows: First, the interest on the prior preference stock shall be paid, the remaining surplus to be divided equally, one-half going to retire prior preference stock and the other half going to the further retirement of the mortgage. When the prior preference issue is retired, the same procedure shall apply to the preferred stock.

It is understood that after the consummation of the above repair and improvement program, there will be no further capital investment in the plant, except as Mr. Henry and Mr. Buchanan are agreed otherwise.

The stockholders will cause to be set up certain accounts on the books so that at all times they may know the distribution of the money under this mortgage.

There being no further business to come before the meeting, it was adjourned.

Petitioner negotiated a mortgage loan of $85,000 from the National Bank of Tacoma, the mortgage and note each bearing the date of December 12, 1935. Neither the mortgage nor the note contained any provision restricting the payment of dividends or disposition of earnings by petitioner, but did provide for the payment of $6,000 on account of principal on August 1, 1936, in addition to interest.

Petitioner contends that the agreement of the stockholders embodied in the minutes of their meeting, above set out, constituted a

written contract of the corporation with its stockholders and the mortgagee, executed prior to May 1, 1936, expressly dealing with the payment of dividends and the disposition of earnings and profits of the taxable year and prohibiting the payment of any dividends in 1936, by reason of the fact that the amount of earnings otherwise available for the payment of dividends in that year was less than the amount required by the contract to be applied upon the mortgage debt. Petitioner argues, therefore, that such agreement comes within the provisions of both subdivisions (1) and (2) of section 26 (c), quoted above.

Petitioner's contention that the mortgagee was a party to the so-called agreement is wholly unsupported by the record. John F. Buchanan, vice president and secretary of petitioner in 1935, who signed the minutes of the stockholders' meeting, testified that one Hayden, who was attorney for petitioner, for the bank, and for the Buchanan estate, was present at the stockholders' meeting, but that he was acting more as a referee between the two factions of stockholders as to what should be done with the mortgage money, how dividends should be paid, and what capital investments should be made. The witness further stated that there was no one at the stockholders' meeting, other than Hayden, to insist on behalf of the bank what action should be taken. No other witness testified on this point.

In support of its contentions, petitioner cites a number of decisions by state courts holding that the minutes of the directors of corporations constituted a contract, or a written instrument, or a promise in writing to pay an obligation, in connection with questions involving the application of statutes of limitation or the statute of frauds. These cases obviously are not in point.

The question here is whether or not the action of the stockholders of petitioner, as recorded in the minutes of their meeting, constituted "a written contract" within the meaning of the Federal taxing act. We think it did not. The stockholders were the beneficial owners of the corporation, and whether or not the corporation can be said to have been a party to the stockholders' agreement and bound thereby is wholly immaterial. The action taken was purely unilateral; the interest of the stockholders was the interest of the corporation; no party having an adverse interest was involved. The creditor bank was not a party, and did not require such action as a condition to the making of the loan. The agreement merely evidenced the compromise of the conflicting views of the two groups of stockholders respecting distribution of the borrowed funds and the policy to be pursued by the corporation as to dividends. Such policy might have been changed at any time by further agreement of the stockholders. It was not a legally enforceable contract which the corporation through its stockholders could not revoke.

Respondent's Regulations 94, issued under the Revenue Act of 1936, provides in article 26–2 (b) that the credit authorized by section 26 (c) (1) is allowable only with respect to a written contract (1) executed by the corporation prior to May 1, 1936, which (2) expressly deals with the payment of dividends, and (3) *operates as a legal restriction upon the corporation* as to the amounts which it can distribute within the taxable year as dividends. This regulation, we have held, is reasonable, and correctly interprets the statute. *Honokaa Sugar Co.*, 43 B. T. A. 151. The same rule likewise must apply to subdivision (2) of section 26 (c), upon which petitioner also relies.

In *Thibaut & Walker Co.*, 42 B. T. A. 29, which involved facts substantially similar to the present case, we said at page 31:

> Congress intended to give a credit to a corporation only where the corporation had bound itself not to pay a dividend. This is reasonably clear from the language of the section. The legislative history indicates that Congress was trying to relieve situations in which a corporation had contracted with creditors to retain its earnings for their protection, but did not have in mind contracts such as this one, entered into by parties inside the corporate group to refrain from declaring dividends for their own mutual benefit.

In the absence of a contract which meets the requirements of section 26 (c), it is immaterial that petitioner did in fact pay $6,000 on its indebtedness during the taxable year, which amount was in excess of its adjusted net income for computation of surtax on undistributed profits. *Hub Clothing House, Ltd.*, 39 B. T. A. 900.

The deficiency determined by respondent is approved.

*Decision will be entered for respondent.*