THE THEW SHOVEL COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 102007.   Promulgated December 9, 1941.

*David L. Johnson, Jr., Esq.*, for the petitioner.
*Thomas F. Callahan, Esq.*, for the respondent.

### OPINION.

TURNER: The respondent determined a deficiency in income tax for the year 1936 in the amount of $49,529.66.   Petitioner claims an overpayment of income tax in the amount of $1,518.67.   The question presented is whether, in computing the surtax on undistributed profits imposed under section 14 of the Revenue Act of 1936, petitioner is entitled, under section 26 (c) (1) of the Revenue Act of 1936, on account of a contract restricting the payment of dividends, to a credit against its adjusted net income.   The parties have filed a written stipulation of facts with certain exhibits attached thereto, and the Board adopts such stipulation as its findings of fact.   We shall recite only the facts deemed necessary to discussion of the issue presented.

Petitioner is an Ohio corporation, with offices at Lorain, Ohio, and is engaged in the manufacture and sale of power shovels and related machinery.   It filed its income tax return for 1936 with the collector of the eighteenth district at Cleveland, Ohio.

As of July 1, 1933, an indenture agreement between petitioner and the National City Bank of Cleveland, the latter acting as trustee, was executed, which agreement provided for an issue of 847,500 principal amount of 6½ percent refunding notes.   As of September 30, 1935, petitioner had outstanding $491,274 principal amount of the said notes and they matured in installments on January 1, April 1, and July 1, 1936.   The said indenture contained a covenant that, so long as the refunding notes remained unpaid, petitioner would not pay

any dividends on its common stock and not more than 5 cents per share per year on its preferred.

Prior to October 11, 1935, the National City Bank of Cleveland had made no loans to petitioner, but the president of the latter had conferred with the president and vice president of the bank concerning the possibility of obtaining a line of credit for a portion of the amount necessary to enable petitioner to redeem, before maturity, the aforesaid outstanding refund notes. On October 11, 1935, the executive committee of the bank took the following action, as stated in its minutes:

Subject to further checking to the satisfaction of the officers, a line of credit for The Thew Shovel Company in the amount of $250,000.00 was approved subject to the usual conditions as to continued satisfactory financial condition and the maintenance of supporting deposit balances; also on condition that dividends shall not be paid except to the extent of two-thirds of the amount of earnings over and above $100,000.00 per year, and not to exceed $100,000.00 per year; and that the direct borrowings from banks shall not exceed $500,000.00 and commercial paper discounted shall not exceed $250,000.00.

On October 29, 1935, the board of directors of the petitioner adopted the following resolution:

Now, THEREFORE, BE IT RESOLVED that the President of this Company be and he is hereby authorized to borrow on behalf of this Company from a bank or banks an amount or amounts of money not to exceed $500,000 in addition to any and all amounts heretofore authorized, and that the proper officers of this Company be and they hereby are authorized to execute on behalf of this Company the Company's note or notes evidencing the amount so borrowed, the rate of interest to be such as the President may in his discretion determine to be the best rate available, and all other terms to be such as the President may in his discretion determine.

FURTHER RESOLVED that the proper officers of this Company be and they hereby are authorized, in the event that the funds necessary therefor can be obtained, to take all steps and do all things necessary or proper to anticipate on January 1, 1936, the installments due April 1, 1936 and July 1, 1936, on the Company's 6½% Refunding Notes dated as of July 1, 1933.

On November 9, 1935, the petitioner's president wrote the bank as follows:

This will confirm our understanding that the National City Bank has approved a line of credit for The Thew Shovel Co. up to $250,000. This with the similar line of credit granted by the Central United National Bank, will enable us to carry out our expressed desire to prepay on January 1st the remaining installments of our refunding notes and also retire the limited amount of debentures outstanding which have not been exchanged for the refunding notes.

Under the terms of our indenture it will be necessary to deposit the funds required for the purpose with the National City Bank, Trustee, December 2nd, 1935 whereupon the Trustee will notify all registered note holders that we are taking advantage of the stipulation which permits us to make prepayment in full January 1st.

We shall therefore wish to make use of the entire line of credit so as to have the funds available either November 30th or December 2nd. Mr. R. B. Miller, our Treasurer, will contact Mr. Shannon with reference to the preparation of the note or notes and will also ascertain if you desire any action by our Board of Directors beyond that taken under advice of counsel at a recent directors meeting authorizing the retirement of the notes and the borrowing of funds necessary for the purpose.

It is further understood that we will at about the same time establish a working account with the National City Bank and carry balances which at the outset will not be less than 10% of the loan and which we shall hope to increase materially thereafter.

It will be the policy of The Thew Shovel Co. to take no action with reference to the resumption of dividends on either preferred or common stock without fully discussing the situation with both banks and ascertaining that any action proposed is not considered unjustifiable.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

On November 13, 1935, the president of the bank replied as follows:

I have your letter of the ninth, concerning the loan arrangements which we discussed the other day when you were in. As I told you, we established a line of credit for The Thew Shovel Company in the amount of $250,000, subject to the continued satisfactory financial condition of the company and the maintenance of supporting balance.

It is our understanding that the borrowings of The Thew Shovel Company and The Universal Crane Company will not exceed $750,000., and that not more than $250,000., of this amount will be in the form of customers' paper discounted.

I believe that it is our understanding that if you have occasion to increase your borrowings beyond the figure stated above, you will talk to us about it at that time. I also note what you say about dividend action and your assurances in this respect are entirely satisfactory.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

On November 29, 1935, the petitioner executed and delivered to the bank its ninety-day note for $250,000 and the funds in that amount were made available to petitioner on November 30, 1935. Thereafter, during the remainder of 1935 and the entire year of 1936, the petitioner remained obligated to the bank in the full amount of $250,000, successively renewing its note on February 27, May 27, August 25, and November 23, 1936. The entire amount was still owing to the bank on January 1, 1937.

On or about December 1, 1935, the petitioner also borrowed an additional amount of $250,000 from the Central United National Bank, and with the funds borrowed from the two banks it called the aforesaid refunding notes for redemption before January 1, 1936. During the year 1936 petitioner paid off $100,000 of the amount borrowed from the Central United National Bank and during that year it made no written request for the bank's consent to declare or pay dividends.

During the year 1935 and prior to October 27, 1936, the petitioner did not declare or pay any dividends on its preferred or common stock. On October 27, 1936, petitioner wrote to the National City Bank as follows:

You have received our financial statement of Sept. 30, 1936 and the statement of earnings for the first nine months of the year. These earnings seem to justify a dividend distribution before the end of the year and such action is the more desirable by reason of the existing surtax upon undistributed profits. Our directors should take definite action to that end before Dec. 1st.

We recognize, however, that a contractual arrangement exists in connection with our $250,000. loan from your bank as expressed in our letter of November 9, 1935 and your reply of Nov. 13, 1935 whereby we are bound to secure your approval of and consent to any dividend distribution that may be made. We therefore request that you advise us as to your attitude regarding the payment of dividends by us in so far as such payment relates to the loan in question. An early reply will be appreciated.

On October 30, 1936, the executive committee of the bank, acting upon the request of the petitioner, took the following action, as stated in its minutes:

In addition to present commitments of $250,000. for direct loans, and $150,000. to cover customers paper discounted, on motion duly made, seconded and unanimously carried it was agreed to discount for The Thew Shovel Company up to a total of $150,000. of customers paper on condition that a similar commitment will be secured from other banks.

The Chairman explained to the Committee that pursuant to an agreement entered into when the direct loan of $250,000. was made to The Thew Shovel Company in October of 1935, that company has asked our permission to pay all arrearages of dividends on the preferred stock of The Thew Shovel Company; 12¼% of the arrearages of dividends of the preferred stock of the Universal Crane Company, and dividends of 50 cents per share on the common stock of The Thew Shovel Company, requiring the payment of a total amount of approximately $332,400.00. After a full discussion, on motion duly made, seconded and unanimously carried it was decided that permission be given to pay such dividends.

On the same day, October 30, 1936, the vice president of the bank wrote the petitioner as follows:

We have your letter of October 27, 1936 with reference to the payment of dividends prior to the end of the current year.

In November, 1935 after most careful investigation we offered to loan The Thew Shovel Company $250,000., provided that the Company could secure an additional loan of equal amount, for the purpose of retiring in advance of their due dates your outstanding refunding notes approximating $500,000 in amount.

It was represented to us that the loan could and would be repaid out or prospective future earnings of the Company and this representation seemed to be substantiated by our investigations. The refunding notes which were to be retired carried a provision restricting the payment of dividends by the Company and it seemed proper to us that restrictions of a similar nature should apply to our loan.

The records of our Executive Committee show that they authorized the loan upon the condition that no dividends should be paid from the first $100,000. of earnings and not to exceed two thirds of the earnings in excess of $100,000. with a further limitation that dividends in excess of $100,000, should not be declared.

Your letter of November 9, 1935, while not setting forth the above arrangement in detail, stated that no dividends would be paid without our approval, thereby enabling us to enforce the conditions upon which our loan was made. We therefore stated in our reply of November 13, 1935 that your assurances in this respect were satisfactory and thereafter made the loan to you pursuant to this contractural agreement.

In view of your unexpectedly large earnings we are willing to waive the limitation that dividends shall not be paid in excess of $100,000. but we do insist that you retain the first $100,000. of your 1936 earnings and one-third of earnings in excess of $100,000., and that such portion of earnings shall not be distributed as dividends, but shall be retained in the working capital of the Company.

We trust that this clearly answers the question raised in your recent communications. We believe that the position we have taken is for the best interest of your Company as well as for the proper protection of this bank.

On November 9, 1936, the petitioner's president wrote a letter to the bank, replying to the above letter, saying that:

This will acknowledge your letter of October 30th which states very clearly the attitude of the National City Bank with reference to the proposed distribution of dividends by The Thew Shovel Co. We recognize the justice of your conclusions and shall be governed in our actions by the limitations originally established by your executive committee when the loan was made to us in November, 1935.

On November 10, 1936, the board of directors of the petitioner declared a dividend of $33.25 per share on its preferred stock, representing all dividends accruing up to December 15, 1936, and a dividend of 50 cents per share on its common stock, amounting to a total of $316,530.75.

At December 31, 1936, the petitioner was indebted to the two banks on its notes in the amount of $400,000. It was also contingently liable in the amount of $589,796.03 on customers' notes discounted.

The petitioner furnished the National City Bank with quarterly financial and earnings statements and the annual reports of its independent auditors. Those statements showed that the net earnings of the petitioner, before provision for Federal income taxes, were $173,332.92 for the year 1935, $512,997.42 for the first nine months of 1936, and $741,939.90 for the full year 1936. The statement dated September 30, 1936, shows "Estimated normal tax" for the first nine months in the amount of $75,789.61. The balance sheets of the petitioner show capital surplus of $854,122.10 and earned surplus of $571,068.26 as of December 31, 1935, and capital surplus of $866,939.60 and earned surplus of $831,127.41 as of December 31, 1936. The corrected net income for income tax purposes, as computed by

the respondent, before provision for Federal income taxes, was $150,-296.13 for 1935 and $771,673.60 for 1936. The Federal income tax paid by petitioner for 1935 was $20,665.72.

The petitioner's "adjusted net income" for the taxable year ended December 31, 1936, was $667,536.92, and its normal income tax for that year was $104,136.68. Income tax already paid by petitioner for 1936 amounts to $108,464.58.

In its return for 1936 the petitioner, relying on section 26 (c) (1) of the Revenue Act of 1936,[1] claimed a credit against adjusted net income in the amount of $315,683.69 and the respondent, in determining the deficiency herein, disallowed the credit so claimed. The credit provided by section 26 (c) (1) is "an amount equal to the excess of the adjusted net income over the aggregate of the amounts which can be distributed within the taxable year as dividends without violating a provision of a written contract executed by the corporation prior to May 1, 1936, which provision expressly deals with the payment of dividends."

It is the contention of the petitioner that its letter of November 9, 1935, and the bank's letter of November 13, 1935, constituted such contract, that it could not have distributed during the taxable year as dividends any amount in excess of $356,662.66 without violating the provisions thereof, and that it is therefore entitled to a credit equal to the excess of its adjusted net income over that amount.

The respondent's argument in effect is that even though a written contract did exist it did not operate as a legal restriction on or prohibition of the payment of dividends within the meaning of the statute.

In its reply brief petitioner specifically disavows any claim that the resolution adopted by the executive committee of the bank on October 11, 1935, preliminary to the commitment by the bank to make the loan, was part of the contract by implication or otherwise. It does claim, however, that by its letter of November 9, 1935, it was obligated to pay no dividends without the consent of the bank and upon acceptance of the proposal by the bank in its letter of November 13, 1935, a contract within the meaning of section 26 (c) (1), *supra*, came into existence. Cf. *Kilby Steel Co.*, 41 B. T. A. 1237, and *Chess & Wymond* v. *Glenn*, 40 Fed. Supp. 666 (U. S. Dist. Ct., W. Dist.

---

[1] SEC. 26. CREDITS OF CORPORATIONS.

In the case of a corporation the following credits shall be allowed to the extent provided in the various sections imposing tax—

   *      *      *      *      *      *

(c) CONTRACTS RESTRICTING PAYMENT OF DIVIDENDS.—

(1) PROHIBITION ON PAYMENT OF DIVIDENDS.—An amount equal to the excess of the adjusted net income over the aggregate of the amounts which can be distributed within the taxable year as dividends without violating a provision of a written contract executed by the corporation prior to May 1, 1936, which provision expressly deals with the payment of dividends. * * *

Ky., Sept. 6, 1941). See also *Atlantic Co.*, 45 B. T. A. 657, wherein the bank had "the right at its option to declare any note of the company [the taxpayer] held by it at once due and payable," but had no right to prevent the payment of dividends. The provisions of the above letters dealing with the payment of dividends appear as the fifth paragraph of petitioner's letter and as the second sentence of the third paragraph of the bank's letter. In the petitioner's letter it was stated that "It will be the policy of The Thew Shovel Co. to take no action with reference to the resumption of dividends on either preferred or common stock without fully discussing the situation with both banks and ascertaining that any action proposed is not considered unjustifiable." The bank's reply was signed by its president and the pertinent statement was, "I also note what you say about dividend action and your assurances in this respect are entirely satisfactory."

These letters certainly meet two tests of the statute. They were in writing, executed prior to May 1, 1936, and they did "expressly" deal with the payment of dividends. Treating the petitioner's letter as an agreement not to pay dividends without the consent of the bank and assuming that such an agreement to the extent consent is not given is a contract within the meaning of the statute here under consideration, it still does not appear from the facts of record that the petitioner is entitled to the credit claimed or any part thereof.

The petitioner under date of October 27, 1936, requested the consent of the bank to the declaration of dividends and on October 30, 1936, the bank gave its reply. The petitioner in its letter stated that it felt its earnings record would justify the resumption of dividends and in that connection called attention to its financial statement of September 30, 1936, and its statement of earnings for the first nine months of the year, both of which had been furnished the bank. In its reply the bank, after referring to the resolution of its executive committee originally authorizing the officers of the bank to make the loan to petitioner, consented to the payment of dividends in the following language:

In view of your unexpectedly large earnings we are willing to waive the limitation that dividends shall not be paid in excess of $100,000 but we do insist that you retain the first $100,000 of your 1936 earnings and one-third of earnings in excess of $100,000, and that such portion of earnings shall not be distributed as dividends but shall be retained in the working capital of the company.

The substance of the petitioner's argument appears to be that the consent of the bank to the distribution of dividends extended only to two-thirds of the excess of the 1936 earnings over $100,000, after making allowance for 1936 Federal income tax, and that the two-thirds

of such excess amounted to $356,662.66, while as to the remainder of its earnings the restrictions of the contract still applied and distribution of any portion of such remainder would have been in violation thereof. Such an interpretation can, in our opinion, result only from a misreading of the bank's letter of consent. That consent was expressed not in terms of the earnings that might be distributed but in terms of the earnings which the bank insisted the petitioner must retain, thereby indicating its consent to the distribution of all other earnings. Specifically, the bank said that it was willing to waive the limitation it had originally determined upon as to the maximum amount of dividends that might be distributed in any one year, but said that it did insist that the petitioner retain the first $100,000 of its 1936 earnings and "one-third of earnings in excess of $100,000." Accordingly, the petitioner was required to retain from its total earnings the first $100,000 of its 1936 earnings and one-third of earnings in excess of $100,000, leaving it free to distribute as dividends all other earnings.

With respect to earnings which could be distributed as dividends by the petitioner unless restricted by the contract between it and the bank, the parties have stipulated that net earnings for the full twelve months of 1936, before provision for Federal income tax, were $741,939.90 and that the normal income tax for 1936 was $104,136.68. A comparative balance sheet attached to and made a part of the stipulation shows that earned surplus at December 31, 1935, was $571,068.26. It is accordingly apparent that earned surplus at the beginning of the year 1936 plus net earnings during that year, after provision for normal income tax, was slightly in excess of $1,200,000. By the terms of the bank's consent the petitioner was required to withhold from distribution the first $100,000 of 1936 earnings and "one-third of earnings in excess of $100,000." Applying that consent to the earnings which could be distributed as dividends on or prior to December 31, 1936, it appears that the petitioner could have distributed during the year 1936 a sum in excess of $700,000. The parties have stipulated that adjusted net income for the taxable year ended December 31, 1936, was $667,536.92. Accordingly adjusted net income did not exceed the amounts which could have been "distributed within the taxable year as dividends without violating provisions of a written contract" and there is no amount which may be credited against adjusted net income under section 26 (c) (1) in computing the surtax on undistributed profits. Cf. *Central West Coal Co.*, 44 B. T. A. 661; *Trianon Hotel Co.*, 44 B. T. A. 1073; and *Maumee Malleable Castings Co.*, 44 B. T. A. 263. It might, of course, be argued that a proper interpretation of the bank's consent would require the retention of only one-third of the 1936 earnings in excess

of and in addition to the first $100,000 from 1936 earnings, but if that interpretation should be made, the result would be to lessen the amount of the earnings still subject to the restriction of the contract and to increase the amount which could be distributed without violation of its provisions, because in such case there would be no restriction whatever in the terms of the bank's consent to the distribution of accumulated earnings on hand at the beginning of the year.

*Decision will be entered under Rule 50.*