## SECURITIES COMPANY OF NEW JERSEY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 105049. Promulgated December 18, 1941.

*John A. Conlin*, *C. P. A.*, for the petitioner.
*R. H. Transue*, *Esq.*, for the respondent.

OPINION.

SMITH: In the determination of the deficiency the respondent included in the taxable income for 1937 "the fair market value of 18,018 shares of capital stock of New Jersey Realty Co. received during the taxable year 1937", which value he "determined to be 12½ cents a share at the time of receipt."

In the petition it is alleged:

Respondent was in error in considering as a dividend the receipt by petitioner of 875 shares in reorganization, which respondent has otherwise officially held to have been a tax-free reorganization within the year 1937.

In the answer to the petition this allegation of fact is denied.

In the signed stipulation of facts filed in this case is the following paragraph:

A plan of reorganization occurred June 1, 1937, wherein the shareholders of Fidelity Union Title & Mortgage Guaranty Co. received shares in a new corporation, New Jersey Realty Co., which exchange respondent has recognized as a tax-free reorganization.

The 18,018 shares of capital stock of the New Jersey Realty Co. received by the petitioner in 1937 consisted of 875 shares received on the reorganization "which exchange respondent has recognized as a tax-free reorganization", and 17,143 shares of that stock received as a dividend. Accordingly, we have two questions presented relative to the 18,018 shares of stock, the first of which is whether 875 shares were received by the petitioner in 1937 as a result of the tax-free exchange and, second, the fair market value of the 17,143 shares received as a taxable dividend.

Relative to the first question, we have no information as to the 875 shares except that the respondent has recognized them as having been received in a tax-free reorganization. It was apparently the intention of the parties to stipulate that the 875 shares in question were received in a tax-free reorganization. We therefore sustain the petitioner in its contention that the 875 shares were received in a tax-free reorganization and were improperly included by the respondent in taxable income.

Relative to the second point, the petitioner contends that the stock of the New Jersey Realty Co. had no fair market value when received by it in 1937. It contends that that corporation had a very large bonded indebtedness; that at the end of its first seven months of operation it had incurred an operating loss of $154,517.60, with no provision made for interest on its more than $8,000,000 of outstand-

ing bonds; and that the evidence of a sale of only 2,157 shares of stock in 1937 at prices ranging from 12½ cents per share to 25 cents per share in 1937 is no criterion of the value of a block of 17,143 shares.

It is to be noted, however, that the few sales that were made in 1937 were at a price of 12½ cents or more per share; that the petitioner placed these shares upon its books of account at a value of 12½ cents per share; and that the respondent has determined that that was their fair market value at date of receipt. In our opinion the evidence submitted by the petitioner does not overcome the presumption of the correctness of the respondent's determination that the 17,143 shares had a fair market value at the date of receipt of 12½ cents per share. We accordingly approve his determination.

In its petition to this Board the petitioner alleges error on the part of respondent as follows:

Omission to privilege as "credit" for computation of surtax under Section 14 and surtax under Section 351 the amount restricted as to dividend disbursement and set aside by petitioner to retire its outstanding bonded indebtedness.

On brief petitioner abandoned its claim for credit in the computation of tax due under section 14. Thus, there remains only the question whether petitioner is entitled to a deduction in the computation of personal holding company surtax. The applicable provision of the statute is section 351 (b) (2) (B) of the Revenue Act of 1936, as amended by section 355 of the Revenue Act of 1937, which provides in part as follows:

SEC. 355. UNDISTRIBUTED ADJUSTED NET INCOME.

For the purposes of this title the term "undistributed adjusted net income" means the adjusted net income (as defined in section 356) minus—

\* \* \* \* \* \* \*

(b) Amounts used or irrevocably set aside to pay or to retire indebtedness of any kind incurred prior to January 1, 1934, if such amounts are reasonable with reference to the size and terms of such indebtedness.

With regard to this section the Senate Finance Committee reported as follows:

The word "irrevocably" is added to protect the revenue, so that amounts may not be set aside for retirement of debt, and deductions secured, although finally such amounts are never used to retire the indebtedness. [Senate Finance Committee Report, 75th Cong., 1st sess., S. Rept. 1242.]

At the close of the year 1937 petitioner's board of directors duly resolved to set aside and use its entire profits for that year to pay and retire its outstanding bonded indebtedness. Thereafter, entries were made in petitioner's general journal as of December 31, 1937, and with reference to the resolution, debiting to surplus and crediting to an account entitled "Provision for Retirement of 6% bonds No-

vember 1, 1942" the amount of $9,963.43. The petition raises the question whether the resolution and book entries entitle petitioner to the deduction under section 355 (b).

The statutory language is unmistakable and clear in meaning and we have no difficulty in applying it to the facts. The ordinary meaning of the word "irrevocable" is that the action referred to is incapable of being recalled or revoked; past recall. Webster's New International Dictionary, 2d Ed. Unabridged. The evidence shows that the amount which petitioner claims to have set aside irrevocably actually remained completely subject to its dominion and control. No consideration was furnished for its action in making the resolution or credit by any other party. It does not appear that the profits in question were actually ever used to retire the bonds, nor were they in fact deposited in a sinking fund for that purpose. The book entries were entirely under the control of the petitioner and the credit could have been removed from its books at will. Under these circumstances it can not be said that petitioner irrevocably set aside its profits to retire its indebtedness.

It is also well to note that this case is distinguishable from *Atlantic Land Co.*, 43 B. T. A. 74. In that case we held that unrestricted book credits of a declared dividend to the accounts of individual stockholders constituted actual payment of the dividend within the meaning of section 27 (a) of the Revenue Act of 1936. In the instant case the bondholders, or the trustee for the bondholders, could not have withdrawn any part of the amount alleged to have been set aside by petitioner. In no way can the book credit in the instant case be construed to have constituted a "payment" and the case is therefore not controlled by the rule of *Atlantic Land Co., supra.* We hold that the resolution of the board of directors and the book entries made with regard to that resolution do not entitle petitioner to a deduction under the provisions of section 355 (b) of the Revenue Act of 1937.

During the taxable year petitioner deposited with the Merchants & Newark Trust Co., as trustee for its bondholders, 10,000 shares of the capital stock of the Fidelity Union Trust Co. This deposit was made in accordance with the provisions of the indenture dated September 28, 1937, which expressly stated that the stock was to be deposited as additional security for the bonds, the maturities of which were thereby extended to October 1, 1947. The shares of stock deposited had a fair market value of $350,000. Petitioner contends that the deposit constituted an irrevocable setting aside of an amount to pay or retire its indebtedness within the purview of section 355 (b), *supra*, and claims that it is therefore entitled to the statutory deduction in computing its Title IA undistributed adjusted net in-

come. The respondent relies upon article 355–2 (b) of Regulations 94, contained in chapter XXXV (A) added by Treasury Decision 4791, 1938–1 C. B. 83. That regulation provides in material part as follows:

(*b*) *Amounts used or irrevocably set aside.*—The deduction is allowable, in any taxable year, only for amounts used or *irrevocably* set aside in that year. The use or irrevocable setting aside must be to effect the extinguishment or discharge of indebtedness. * * *

The question thus presented appears to be one of first impression here. It is not necessary for us to pass upon the validity of the respondent's regulations at this time. Those regulations may neither add to nor detract from the force and effect of the statute. We shall satisfy ourselves as to the applicability of the statutory provisions in the instant case.

It is clear from the original trust indenture, dated October 1, 1927, which provided for the issuance of the bonds as to which the deposit of additional security was made, that the bondholders were to have no recourse against the security except in the event of default in payment by the petitioner. Furthermore, title to the security was to remain in petitioner's name until such default. After default in payment the stock was to be transferred to the trustee only if the trustee requested the action. It does not appear that a transfer of title to the trustee was ever made. The petitioner retained the right to receive all dividends on the stock and was entitled to all rights to subscribe declared upon it.

The petitioner also retained all voting rights in the stock. The original indenture further provided that, when the whole amount of principal and interest due on the bonds was paid and the company had performed all of its obligations under the indenture, then all interest of the trustee in the shares of stock would revert to petitioner.

These provisions of the original indenture were not modified or revoked by the 1937 extension agreement but, on the contrary, were expressly continued in effect. Thus, the petitioner, which is enjoying all the incidents of ownership, except that of free disposition, in the stock in question and may ultimately regain its complete interest therein, now claims that the stock was irrevocably set aside to pay or retire its bonded indebtedness. The fallacy in petitioner's contention is at once apparent.

It does appear that the deposit of the stock was irrevocable in that petitioner could not voluntarily recall it. That alone, however, does not satisfy the conditions of the statute. The statute requires that an amount be irrevocably set aside *to pay or retire an indebtedness.* The agreements under which the deposit of security was made con-

templated that petitioner would make the payments and that thereafter the security would be returned to it. The case is clearly one in which the amount set aside may never be used to retire the indebtedness. As indicated by the language of Senate Report 1242, *supra*, the statute permits no deduction in such cases.

The respondent is sustained on this issue.

*Decision will be entered under Rule 50.*