L. O. KOVEN & BROTHER, INC., PETITIONER, *v*. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 108105.   Promulgated August 5, 1942.

*Irving Warshaw, C. P. A.*, for the petitioner.
*R. S. Garnett, Esq.*, for the respondent.

#### OPINION.

MELLOTT: The Commissioner determined the following deficiencies in income tax for the calendar years 1936 and 1937:

| | |
|---|---|
| 1936 | $2,767.60 |
| 1937 | 4,167.16 |
| Total | 6,934.76 |

The sole issue is whether respondent erred in denying a credit in the amount of $15,624.24, claimed under section 26 (c) of the Revenue Act of 1936, in computing the surtax for each year on petitioner's undistributed profits.

The proceeding was submitted upon a stipulation of facts, documents introduced in evidence without objection, and admissions in

the pleadings. The facts are found to be as stipulated. The following summary will suffice for present purposes.

Petitioner is engaged in the manufacturing business in New Jersey and filed its income and excess profits tax returns for the taxable years with the collector of internal revenue for the fifth district of New Jersey. Its books were kept and its returns were made upon an accrual basis.

Under date of September 15, 1933, petitioner entered into a written contract with Henrietta Koven in which it was agreed that the corporation was indebted to her in the sum of $156,242.39. The contract provided that the indebtedness was to be evidenced by a bond of the corporation in that amount payable September 15, 1943, with interest at the rate of 6 percent per annum.

In order to provide for additional assurance of the payment of the bond when due it was agreed that a mortgage be executed, which would be a valid first lien on the real estate; that the bond and mortgage be in form provided by the creditor; and that interest be paid monthly until the principal sum should be fully paid and satisfied. In addition to these provisions the agreement stated:

2. (a) It is expressly understood and agreed that the Corporation set aside as a reserve from the profits of the Corporation for the year 1933, a sum equivalent to ten (10%) per cent of the face amount of the debt or Fifteen Thousand Six Hundred and Twenty-Four 24/100 ($15,624.24) Dollars and a like amount shall be set aside as a reserve from the annual profits or earnings of the Corporation each and every year thereafter until the said reserve aggregates the amount of the said debt or until the debt evidenced by the within referred Bond and Mortgage is fully paid.

(b) The Corporation covenants and agrees that until the Bond to Koven is fully paid only the yearly profits of the Corporation which shall be in excess of the amount required to be set aside as hereinabove provided may be used for the payment of dividends.

(c) The corporation further covenants and agrees that in case the amount of the net profits of the Corporation during any year be less than the amount required to be set aside as a reserve for the amortization of the Bond and Mortgage hereinbefore provided, then, in such event any deficiency shall be set aside out of the free and unrestricted surplus of the Corporation from prior years and in case there be no free and unrestricted surplus, then such deficiency shall be added to the amount of reserve for the amortization of the Bond and Mortgage required to be set aside out of the earnings of the next succeeding years and the Corporation covenants and agrees not to pay any dividends out of the succeeding year's profits until such deficiency, plus the amount of reserve required to be set aside for the then current year be earned and are set up as a reserve on the books of the Corporation, restricting same from being used for the payment of dividends.

3. It is expressly understood and agreed that upon the full payment of the debt to Koven, the Corporation shall be fully released from the restrictions hereinabove provided with respect to the payment of dividends.

The following schedule shows petitioner's adjusted net income for each year and its earned surplus at the beginning of the year:

| Year | Adjusted net income | Earned surplus |
|------|--------------------:|---------------:|
| 1936 | $38, 596. 23 | $73, 320. 64 |
| 1937 | 78, 866. 68 | 57, 049. 77 |

Petitioner set up on its books an account called "Reserve for Amortization of Mortgage." At the end of each year it added $15,624.24 to this account. The amount in the account at the end of each year was:

| | |
|---|---:|
| 1933 | $15, 624. 24 |
| 1934 | 31, 248. 48 |
| 1935 | 46, 872. 72 |
| 1936 | 62, 496. 96 |
| 1937 | 78, 121. 20 |

"No action was taken by petitioner to set aside the sum of $15,624.24 in either of the years 1936 and 1937, or in any other year, other than to set up the reserve on its books of account * * *. Petitioner at all times had the use and control of the aforesaid funds, and such funds were all held in a general bank account and used in its business as occasion demanded. No trustee was ever designated for the purpose of holding funds for the amortization of the indebtedness in question. The creditor never at any time made any examination of the books of the corporation."

The entire amount of the indebtedness to Henrietta Koven was unpaid on December 31, 1937.

In its income and excess profits tax returns for each of the taxable years petitioner, on line 28, listed the amount of $15,624.24 as a "Credit for Contracts Restricting Dividend Payments", deducting this amount, together with other items not now in controversy from its adjusted net income. In determining the deficiencies in tax the Commissioner disallowed the claimed credit and made other adjustments not now in issue.

Upon brief the parties discuss the applicability of subdivisions (1) and (2) of section 26 (c) of the Revenue Act of 1936, shown in the margin.[1]

---

[1] SEC. 26. CREDITS OF CORPORATIONS.

In the case of a corporation the following credits shall be allowed to the extent provided in the various sections imposing tax—

\*      \*      \*      \*      \*      \*      \*

(c) CONTRACTS RESTRICTING PAYMENT OF DIVIDENDS.—

(1) PROHIBITION ON PAYMENT OF DIVIDENDS.—An amount equal to the excess of the adjusted net income over the aggregate of the amounts which can be distributed within the taxable year as dividends without violating a provision of a written contract executed by the corporation prior to May 1, 1936, which provision expressly deals with the payment of dividends. If a corporation would be entitled to a credit under this paragraph because of a contract provision and also to one or more credits because of other contract provisions, only the largest of such credits shall be allowed, and for such purpose if two or more credits are equal in amount only one shall be taken into account.

(2) DISPOSITION OF PROFITS OF TAXABLE YEAR.—An amount equal to the portion of the earnings and profits of the taxable year which is required (by a provision of a written

Petitioner contends that the contract meets every requirement of section 26 (c) (1). It can not be gainsaid that there was a written contract; that it was executed prior to May 1, 1936; and that it contained a provision expressly dealing with the payment of dividends. When we seek to find the amount which is "equal to the excess of the adjusted net income over the aggregate of the amounts which can be distributed within the taxable year (s) as dividends without violating" the provision of the contract, the answer is not so readily apparent.

Petitioner argues that article 26–2 of Regulations 94, construing section 26 (c) (1), is "improper, unreasonable, arbitrary and capricious." It takes particular exception to the interpretation that the credit may not be allowed where a corporation is merely required to set aside periodically a sum to retire its bonds or where the applicable contract merely provides that while its bonds are outstanding the current assets shall not be reduced below a specified amount. It also criticises the portion of the regulation dealing with the credit under (c) (2), especially the interpretation that a provision of a contract merely requiring the corporation to retire annually a percentage or amount of the bonds, to maintain a sinking fund to retire all or a certain percentage of the bonds at maturity, or to pay into a sinking fund for the retirement of bonds a specified amount based upon a percentage of gross sales, gross income, or finished products does not entitle a corporation to credit under this subdivision of the statute.

We agree with petitioner's major thesis that the Treasury Department can not, by regulation, add to, amend, or alter an act of Congress. The regulation in question, however, is, in our judgment, valid and not subject to the objections urged by petitioner. It has been before the Board in several cases and has been approved. See, for example, *Honokaa Sugar Co.*, 43 B. T. A. 151; and *Henry Mill & Timber Co.*, 43 B. T. A. 1073. In each of the cited cases the Commissioner's interpretation that the contract must be one which operates as a legal restriction against the corporation as to the amount which it can distribute within the taxable year as dividends was approved. The statute, being "in the nature of a gratuitous special deduction" (*Atlantic Co.* v. *Commissioner*, 129 Fed. (2d) 87, must be strictly construed. Cf. *Moloney Electric Co.* v. *Commissioner*, 120 Fed. (2d) 617; *Helvering* v. *Northwest Steel Rolling Mills, Inc.*, 311 U. S. 46.

contract executed by the corporation prior to May 1, 1936, which provision expressly deals with the disposition of earnings and profits of the taxable year) to be paid within the taxable year in discharge of a debt, or to be irrevocably set aside within the taxable year for the discharge of a debt; to the extent that such amount has been so paid or set aside. For the purposes of this paragraph, a requirement to pay or set aside an amount equal to a percentage of earnings and profits shall be considered a requirement to pay or set aside such percentage of earnings and profits. As used in this paragraph, the word "debt" does not include a debt incurred after April 30, 1936.

Petitioner insists that in determining whether the credit should be allowed under section 26 (c) (1) the accumulated or free surplus should not be taken into consideration. It says:

> The surtax on undistributed profits does not apply to the surplus of corporations accumulated in prior years. The amount taxable is computed on the adjustment of the *net income* of the corporations for the *current taxable year*.

The statement is correct so far as it goes; but it does not aid petitioner under the facts now before us. While accumulated surplus is not to be subjected to the surtax, it must be considered in determining the amount which can be distributed within the taxable year without violating the provisions of a written contract. *Trianon Hotel Co.*, 44 B. T. A. 1073. Of course, if the contract restricts payment out of the accumulated earnings, this provision must be considered in determining the amount which can be distributed. *Columbia Concerts, Inc.*, 46 B. T. A. 1072. Cf. *Kilby Steel Co.*, 41 B. T. A. 1237. But petitioner's contract did not so restrict it. On the contrary it was specifically required to use its "free and unrestricted surplus * * * from prior years" if its net earnings were less than $15,624.24. Under the circumstances we think it must be held that petitioner's "free and unrestricted surplus from prior years" is to be taken into consideration in determining the amount which it could distribute without violating the contract. Giving effect to the stipulated facts the amount for each taxable year is as follows:

|  | 1936 | 1937 |
| --- | --- | --- |
| Adjusted net income | $38,596.23 | $78,866.68 |
| Earned surplus at beginning of year | 73,320.64 | 57,049.77 |
| Total | 111,916.87 | 135,916.45 |
| Less amount restricted | 15,624.24 | 15,624.24 |
| Amount which could be distributed | 96,292.63 | 120,292.21 |

It is obvious that the amount which petitioner could have distributed as a dividend in each of the years is in excess of its adjusted net income. The credit under section 26 (c) (1) is limited to the excess of the latter over the former. Since there is no excess, no credit may be allowed under this subdivision. Cf. *Central West Coal Co.*, 44 B. T. A. 661 (on appeal, C. C. A., 7th Cir.); *Thew Shovel Co.*, 45 B. T. A. 920 (on appeal, C. C. A., 6th Cir.).

But is petitioner entitled to a credit under the provisions of section 26 (c) (2)? This section requires that there be: (1) a written contract executed prior to May 1, 1936; (2) that the contract contain a provision expressly dealing with the disposition of earnings and profits of the taxable year; and (3) that it require a portion of the earnings and profits of a taxable year: (a) to be paid within the taxable year in discharge of a debt, or (b) to be irrevocably set aside in the taxable year in discharge of a debt. When the above conditions are met, then

the credit may be given to the extent that such amount (a) has been paid or (b) has been set aside. *Antietam Hotel Corporation* v. *Commissioner*, 123 Fed. (2d) 274.

The contract between petitioner and Henrietta Koven meets most of these requirements. It was executed September 15, 1933, and contains a provision dealing with the disposition of earnings and profits of the taxable year. It does not require that a portion of the earnings and profits be paid during the taxable year in discharge of a debt and no payment was made. It does require, however, that $15,624.24 "be set aside as a reserve from the annual profits or earnings of the Corporation" each and every year from and including 1933 "until the said reserve aggregates the amount of the said debt or until the debt evidenced by the within referred Bond and Mortgage is fully paid."

The stipulated facts have been set out above and need not be repeated. Briefly summarized, they show that no action was taken by petitioner to set aside the $15,624.24 "other than to set up the reserve on its books of account"; that it at all times had the use and control of such funds; that no trustee was ever designated for the purpose of holding them; and that they "were all held in a general bank account and used in its business as occasion demanded." Examination of the balance sheet attached to its return for 1937 indicates that its business had actually demanded the use of some of the amount; for while its "Reserve for Amortization of Mortgages" was $78,121.20 and its "Free Surplus" was $70,359.08, its cash on hand was only $34,233.81.

Respondent urges that the act of petitioner in creating the book reserve while continuing to use the money in its business can not be considered as meeting the requirements of the statute and that the intent of Congress when it inserted the words "or to be irrevocably set aside" in the statute was that such money should be placed beyond the reach and control of the owner and held for a particular purpose. This was the view taken by the Board in construing a similar expression in section 351 (b) (2) (B) of the Revenue Act of 1936, as amended by section 355 of the Revenue Act of 1937, having reference to deductions in the computation of personal holding company surtax. *Securities Co. of New Jersey*, 45 B. T. A. 1048. In commenting on the use of the word "irrevocably" it was pointed out that the Senate Committee on Finance (S. Rept. No. 1242, 75th Cong., 1st sess.) had said:

* * * The word "irrevocably" is added to protect the revenue, so that amounts may not be set aside for retirement of debt, and deductions secured, although finally such amounts are never used to retire the indebtedness.

Conclusion was reached that the book entry, setting aside a portion of the net profits for the purpose of retiring its bonded indebtedness, did not constitute an irrevocable setting aside of profits within the meaning of the statute.

In the cited case it was pointed out that "The ordinary meaning of the word 'irrevocable' is that the action referred to is incapable of being recalled or revoked; past recall." If funds are "irrevocably set aside" for the payment of a debt, there must be some definite act which divests the corporation's control over them. *Antietam Hotel Corporation* v. *Commissioner*, *supra*.

The cases cited and relied upon by petitioner have been examined but are believed to be distinguishable on their facts. *Commissioner* v. *Strong Manufacturing Co.*, 124 Fed. (2d) 360; certiorari granted, 316 U. S. 651, and *Antietam Hotel Corporation* v. *Commissioner*, *supra*, involved the question whether there was an actual setting aside of earnings *in the taxable year*—not whether there was an "irrevocable" setting aside. In *Carolina-Florida Realty Co.*, 46 B. T. A. 777, the amounts were required to be, and were, paid to a trustee for deposit in a sinking fund. *Prudential Financial Corporation of Quincy*, 46 B. T. A. 796 (on appeal, C. C. A., 1st Cir.), involved facts more nearly analogous to those in the instant proceeding. In that case the contract provided that the corporation "shall irrevocably set aside fifty percent (50%) of its net earned income each calendar year for the retirement or payment of the principal amount of Certificates of Indebtedness." The resolution of the board of directors directed that the amount in question be "irrevocably set aside in a special fund or reserve account * * * to be used exclusively for the retirement of the certificates of indebtedness." This was done. Discussing whether the setting aside was irrevocable, this Board pointed out that the contract "required petitioner to 'irrevocably set aside * * *'" the amount; that this was a condition precedent to the purchase of certificates from petitioner; that there clearly was consideration for the resolution of the board of directors; and "because of the presence of such consideration, the book entries * * * could not be reversed at the will of the directors." Answering another contention of the Government, it was pointed out "that the funds actually were retained in petitioner's bank account and were neither used in the business of petitioner nor in the making of choice risk loans." In the instant proceeding there was no corporate resolution and the contract did not require that there be an irrevocable setting aside. Petitioner's creditor, for aught that appears in this record, had not seen fit to make an irrevocable setting aside, a condition precedent to the loan. Good faith on the part of the debtor would no doubt require that it refrain from reversing the entries setting up the reserves; but it clearly had the power to do so. There was nothing irrevocable in the action taken by this petitioner. It amounted to no more than a reminder that the portion of its surplus contained in the so-called reserve account was not available for the payment of dividends. No

money was actually set aside for the payment of a debt, the sums credited to the account remained completely subject to petitioner's dominion and control, and it continued to use them in, and subject them to. the risks of its business. Moreover the contract contemplated that the amount of the book reserve should be used precisely as it was used in petitioner's business.

Under the present facts it can not be found that there had been an "irrevocable" setting aside of earnings and profits in the taxable years nor can a conclusion to that effect be reached. It follows that petitioner is not entitled to the claimed credit under section 26 (c) (2), *supra.*

*Decision will be entered for the respondent.*